FILED

MAY 14 2009

CIRCUIT COURT FOR
BALTIMORE CITY
IN THE CIRCUIT COURT
FOR BALTIMORE CITY, MARYLAND

Tanya Miller
Kevin Miller
10012 Graystone Dr.
Upper Marlboro MD 20772
*On their own behalf and on behalf of
all others similarly situated,*

        Plaintiffs,

    v.

Prestige Financial Services, Inc.
1420 SOUTH 500 WEST
SALT LAKE CITY, UT 84115
Serve on:
THE CORPORATION TRUST INC
300 E LOMBARD ST.
BALTIMORE, MD 21202

        Defendant.

| | |
|---|---|
| Case: 24-C-09-003212 | |
| CV File New | $50.00 |
| Appear Fee | $20.00 |
| MISC | $25.00 |
| TOTAL | $125.00 |

Case No. _____

COMMENT:
MILLER VS. PRESTIGE FINANCIAL

Receipt #200900013564
Cashier: MST-CCBCYB2
05/15/09 10:02am

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.    Plaintiffs Tanya Miller and Kevin Miller ("Named Plaintiffs" or

"Plaintiffs"), on their own behalf and on behalf of all others similarly situated,

through their counsel, Peter Holland of The Holland Law Firm, LLC and Scott C.

Borison of The Legg Law Firm, LLC file this Class Action Complaint and Demand

for Jury Trial and for cause state:

2.    The Named Plaintiffs have filed this complaint against the

-1-

I, Frank M. Conaway, Clerk of the Circuit Court
for Baltimore City, hereby certify that this is
a true copy from the record in this court.
Witness the hand and act of the undersigned
this 24 day of JUNE 20 09

*[signature]*

Circuit Court for Baltimore City, Maryland



Defendant, Prestige Financial Services, Inc. ("Prestige") for violations of statutory and common law duties and for breaching their contract with the Named Plaintiffs in connection with the repossession of Named Plaintiffs' car.

      3.     Named Plaintiffs and the others similarly situated purchased motor vehicles that were financed by retail installment sales agreements which were then assigned to PRESTIGE. Later, these cars were repossessed by Prestige. This class of persons shall be referred to as the "Repossession Class."

      4.     PRESTIGE repossesses a large number of motor vehicles from Maryland residents.

      5.     PRESTIGE repossessed the motor vehicles of the Named Plaintiffs and the Repossession Class.

      6.     After repossession, PRESTIGE regularly sends form notices to the Repossession Class of the pending private sale (the "pre-sale" notice).

      7.     PRESTIGE'S pre-sale form notice fails to provide the Plaintiffs and Repossession Class the disclosures required by Maryland law and by the contracts between the Plaintiffs and Repossession Class on the one hand and PRESTIGE on the other hand.

      8.     PRESTIGE sold the motor vehicles of the Named Plaintiffs and the Repossession Class at private sales.

      9.     In its pre-sale notice, PRESTIGE did not give the legally required notice of the time and place of the private repossession sale.

10.     If a customer fails to reinstate the loan by making up past due payments, PRESTIGE sells the customer's motor vehicle at a private sale.

11.     After the sale, PRESTIGE sends form notices to the Named Plaintiffs and Repossession Class.  These will be referred to as the "post-sale" notices.

12.     The post-sale notices do not disclose the facts which are specifically required under Maryland law following the private sale of a repossessed vehicle.  The missing disclosures include but are not limited to such basic information as: (1) the identity of the buyer; (2) the number of bids sought and received at the sale; and (3) information about the condition of the car at the time of repossession.

13.     Any proceeds from the private sales are supposed to be properly applied to the customer's balance.

14.     The sale proceeds are usually less than the amount owed by the customer, which results in a deficiency balance.

15.     PRESTIGE'S post-sale notices state that if there is a deficiency after application of the sales proceeds to the amount allegedly owed, then the customer owes this deficiency.  In its post-sale notice, PRESTIGE demands payment of the alleged deficiency.

16.     If the customer does not pay the deficiency amount, PRESTIGE files a collection action – i.e. it sues the consumer.

17.    PRESTIGE has filed lawsuits against Named Plaintiffs and hundreds of others similarly situated. This class of persons shall be referred to as the "Lawsuit Class."

18.    Together with the lawsuits it files seeking deficiency balances, PRESTIGE attaches copies of credit applications and other documents that contain consumers' social security numbers, drivers license numbers and other extremely private information of the Plaintiffs and the Lawsuit Class. The filing of this private information violates statutes and duties which PRESTIGE owes to the Lawsuit Class. The violation of these statutes and duties have caused Named Plaintiffs and the Lawsuit Class damages, injury or loss.

19.    As a result of PRESTIGE'S acts and omissions, Maryland law prohibits PRESTIGE from collecting any alleged deficiency which remains after the sale of the repossessed vehicles. This prohibition applies to the Repossession Class.

20.    Maryland law allows Named Plaintiffs and the Repossession Class to recover statutory damages, compensatory damages, treble damages, statutory penalties, declaratory judgment, and injunctive relief.

21.    PRESTIGE'S violations of Maryland law have enriched Defendant unfairly at the expense of Maryland borrowers in the Repossession Class, a practice this suit seeks to end.

22.    PRESTIGE'S use of form notices which omit material information

-4-

required by Maryland law makes this case particularly suitable for resolution through a class action lawsuit.

23.   PRESTIGE'S failure to comply with Maryland law is knowing.

24.   PRESTIGE'S uniform disclosure of social security numbers, driver's licenses numbers and other private information is illegal and constitutes a per se violation of Maryland's Consumer Protection Act.

### PARTIES

25.   Tanya Miller and Kevin Miller are both residents of Maryland who entered into a contract to purchase a vehicle from a Maryland dealership, and who entered into a Maryland retail installment sales contract by which they financed the purchase of their vehicle.  This contract was, upon information and belief, assigned and sold to PRESTIGE.

26.   PRESTIGE is a Utah corporation with Utah citizenship with its principal place of business in Utah.  PRESTIGE is licensed to do business in Maryland, and regularly conducts business in Baltimore City, Maryland.

### JURISDICTION AND VENUE

27.   This Court has jurisdiction over this case under Md. Cts. & Jud. Pro.  § 6-103(b), because PRESTIGE transacts business and performs work and provides services in Maryland, regularly does and solicits business in Maryland, and engages in other persistent courses of conduct in Maryland.

28.     Venue is proper in this Court under Md. Cts. & Jud. Pro. § 6-201, because PRESTIGE carries on regular business in Baltimore City, Maryland.

## FACTUAL ALLEGATIONS

29.     On or about June 24, 2005, Named Plaintiffs purchased a used Chevy Trailblazer (the "Trailblazer") from Easterns Auto Outlet of Waldorf, Maryland ("Easterns").  Named Plaintiffs' purchase was financed through a Retail Installment Sale Contract ("RISC") attached as **EXHIBIT 1**.

30.     The RISC affirmatively elects to be governed under Subtitle 10 of Title 12 of the Commercial Law article (i.e., Maryland's Credit Grantor Closed End Credit Provisions, hereafter abbreviated as "CLEC")(See **EXHIBIT 1**, reverse side, paragraph 6, stating **"Applicable Law Federal Law and Maryland Law and specifically Subtitle 10 of Title 12 of the Commercial Law Article of the Maryland Code apply to this Contract."**)

31.     The Named Plaintiffs purchased the Trailblazer primarily for personal, household and family purposes.

32.     Easterns arranged the financing for the Millers' purchase of the Trailblazer.  The Millers' RISC was assigned to PRESTIGE, which accepted the contract and received monthly payments from the Millers.  See **EXHIBIT 1**, Assignment Box ("Seller assigns its interest in this contract to PRESTIGE FINANCIAL.").

33.     On or about November 14, 2008, PRESTIGE and/or its agents

-6-

seized and repossessed the Trailblazer.

34.    PRESTIGE claims that they then wrote to each of the Millers individually, telling them that the car would be sold unless they reinstated or redeemed their contract. *See* **EXHIBIT 2** (two pages), Notice of Sale and Right to Redeem.  These two identical letters were titled ""Repo Letter" indicating its status as a form document used in every case. *Id.*  This form letter failed to advise the Millers of basic information about the time and place of the proposed sale.  Instead, the letter stated simply that the vehicle would be sold if the consumers failed to redeem it within 15 days. *See* **EXHIBIT 2**.

35. ·   The Millers' car was sold at a private auction.

36.    On or about December 30, 2008, PRESTIGE sent the Millers a letter advising them that the car had been sold, stating the amount of the deficiency which remained after sale, and making a demand for payment of a "payoff balance" of $8,958.95 *after* the vehicle had been sold. *See* **EXHIBIT 3,** Post-Sale Letter.  Like **EXHIBIT 2**, the Post-Sale Letter attached as **EXHIBIT 3** is a form document used in every case.

37.    Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Comm. Law Code Ann., § 12-1001 *et. seq.* governs PRESTIGE'S extension of credit to the Millers and all members of the  Repossession Class.  CLEC requires that credit grantors such as PRESTIGE sell repossessed vehicles in a commercially reasonable manner, provide a full accounting of sale proceeds and

disclosure of certain material facts to its borrowers:

> (j) *Sale or auction - Authorized; notice; commercially reasonable manner; accounting.* --
> (1) (i) Subject to subsection (1) of this section, the credit grantor shall sell the property that was repossessed at:
> 1. Subject to paragraph (2) of this subsection, a private sale; or
> 2. A public auction.
> (ii) **At least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address.**
> (iii) Any sale of repossessed property must be accomplished in a commercially reasonable manner.
> (2) **In all cases of a private sale of repossessed goods under this section, a full accounting shall be made to the borrower in writing** and the seller shall retain a copy of this accounting for at least 24 months. **This accounting shall contain the following information:**
> (i) The unpaid balance at the time the goods were repossessed;
> (ii) The refund credit of unearned finance charges and insurance premiums, if any,
> (iii) The remaining net balance;
> (iv) **The proceeds of the sale of the goods;**
> (v) The remaining deficiency balance, if any, or the amount due the buyer;
> (vi) **All expenses incurred as a result of the sale;**
> (vii) **The purchaser's name, address, and business address;**
> (viii) **The number of bids sought and received; and**
> (ix) **Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.**
> \*   \*   \* (emphasis supplied)

Md. Comm. Law Code Ann., § 12-1021 (j).

38.     PRESTIGE'S form notice attached as **EXHIBIT 2** (the Pre-Sale

-8-

Notice) violates CL § 12-1021(j)(1)(ii) because it fails to notify Named Plaintiffs of the time and place their car will be sold via certified mail, return-receipt requested.  On information and belief, PRESTIGE sent similar form notices to all of its other Maryland borrowers whose vehicles were repossessed, and that PRESTIGE'S form notice to all members of the Repossession Class also failed to inform the Repossession Class via certified mail, return receipt requested of the time and place at which their vehicles would be sold, in violation of CL § 12-1021(j)(1)(ii).  Moreover, on information and belief, PRESTIGE also systematically and routinely omits the date of sale in these form notices.  On information and belief, it is PRESTIGE'S standard practice.  The actual date of sale is a material fact which is required by the CLEC provisions set forth above. Their own paperwork shows that PRESTIGE did not, as represented, sell the Plaintiffs' car on 12/31/08.  By failing to accurately inform the Plaintiffs and the Repossession Class of the final date by which they must redeem their vehicle, and the time and the location of the sale, PRESTIGE denied the Plaintiffs and the Repossession Class important rights and violated CLEC's requirements.

39.     PRESTIGE'S form notice attached as **EXHIBIT 3** (the Post-Sale Notice) also violates CL § 12-1021(j)(2) by failing to make the full accounting required by this statute for vehicles sold at private sale.  Among its deficiencies, PRESTIGE'S form notice fails to disclose to Named Plaintiffs (1) the purchaser's name, address, and business address; (2) the number of bids sought and

received; and (3) the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality. On information and belief, PRESTIGE sent similar form notices to all of its other Maryland borrowers whose repossessed vehicles were sold at private sale, and PRESTIGE'S form notice to all members of the Repossession Class also failed to provide the Class with the full accounting and disclosures required by CL § 12-1021(j)(2), including (1) the purchaser's name, address, and business address; (2) the number of bids sought and received; and (3) the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality, in violation of CL §12-1021 (j)(2).

40.    PRESTIGE'S failure to provide the full accounting and material facts whose disclosure is mandated by CL § 12-1021 (j) deprived Named Plaintiffs and members of the Repossession Class of information and benefits to which they were entitled by law. The disclosures mandated by CL § 12-1021 (j) are intended to help borrowers like the Named Plaintiffs and the Repossession Class protect their interests in their vehicles, and to hold credit grantors such as PRESTIGE accountable for selling the vehicles in a commercially reasonable manner. Without disclosure of the information required by CL § 12-1021 (j), Named Plaintiffs and members of the Repossession Class do not know when or where their vehicles will actually be sold at, how long they have to redeem the

-10-

vehicles or whether PRESTIGE'S claimed deficiencies are reasonable and in compliance with the law.

41.     Absent strict compliance with the statutorily required notices regarding repossession, a Maryland credit grantor may not lawfully assess or collect any deficiency from consumer borrowers, or any other person liable under the contract, following disposition of the repossessed property.  The CLEC statute specifically provides:

> If the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement.

CL § 12-1021 (k)(4).

42.     In addition, absent strict compliance with the statutorily required notices regarding repossession, a credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." CL § 12-1018(a)(2).  Further, a credit grantor such as PRESTIGE which knowingly violates any provision of the CLEC is liable for statutory damages of three times the interest, costs, fees and other charges collected in excess of that authorized by CLEC.  CL § 12-1018 (b).

43.     On information and belief, before selling a vehicle following its repossession, and as a part of its routine business practices in Maryland, PRESTIGE systematically and regularly fails to send its Maryland customers a proper written notice via certified mail, return receipt requested, giving the

customer at least 10 days notice of the time and place of the sale, in violation of
CL § 12-1021 (j)(1)(ii).

44.    On information and belief, as a part of its routine business practices
in Maryland, PRESTIGE unfairly and deceptively states simply that it will sell the
vehicles if the consumers do not redeem within 15 days; PRESTIGE offers no
date or time or location whatsoever.

45.    On information and belief, as a part of its routine business practices
in Maryland, PRESTIGE systematically and regularly sends post-sale notices
(**EXHIBIT 3**) to its Maryland customers with RISC or other credit contracts
governed by CLEC, whose cars were sold at private sales, which do not provide
the full accounting and disclosures mandated by CLEC at CL § 12-1021 (j)(2).
Specifically, PRESTIGE routinely and regularly omits from its disclosures: (1) a
statement of the purchaser's name, address, and business address; (2) a
statement of the number of bids sought and received; and (3) a statement as to
the condition of the goods at the time of repossession which would cause their
value to be increased or decreased above or below the market value for goods of
like kind and quality.

46.    On information and belief, notwithstanding PRESTIGE'S failure to
comply with CLEC's mandatory notice requirements, PRESTIGE has knowingly
assessed, demanded and attempted to collect or has collected alleged deficiency
balances from Named Plaintiffs and the Repossession Class, for which the

borrowers were not liable as a matter of law.  On information and belief,

PRESTIGE has made unlawful collection demands to Named Plaintiffs and the

Repossession Class for amounts exceeding five million dollars in the aggregate,

has falsely represented to those borrowers that deficiency balances were owed,

has collected money from borrowers to which they were not entitled, and has

threatened to sue, and has sued, borrowers who as a matter of law did not owe

any deficiency.

      47.     On information and belief, at all relevant times, PRESTIGE has had

actual knowledge that Named Plaintiffs and the Repossession Class were not

liable for any deficiency as a result of PRESTIGE'S failures to comply with CLEC,

but has nevertheless persisted in its unlawful collection activities.  PRESTIGE

has not returned to Named Plaintiffs and the Repossession Class the interest,

costs, fees and other charges which it must forfeit on each credit contract

pursuant to CLEC, CL § 12-1018 (a)(2).  Unless and until this Court grants the

declaratory and injunctive relief Plaintiffs seek through this action, PRESTIGE will

continue to engage in business practices which violate CLEC and which result in

deficiency judgments to which PRESTIGE is not entitled.

      48.     As part of its routine business practices in Maryland, PRESTIGE

illegally, unfairly and deceptively includes private information (such as social

security numbers) of the Named Plaintiffs and the Lawsuit Class in public court

filings.

## CLASS ACTION ALLEGATIONS

49.     Named Plaintiffs bring this action individually and on behalf of: (1) a Repossession Class; and (2) a Lawsuit Class.

50.     The Repossession Class consists of:

**all persons whose vehicles were repossessed and sold at private sale by PRESTIGE pursuant to a RISC or other credit contract governed by CLEC, as to whom PRESTIGE:**

> **(a)     did not send its customer a pre-sale notice which complied with CLEC,  CL § 12-1021 (j)(1)(ii); and/or,**
>
> **(b)     did not send its customer the post-sale notice accounting and disclosures mandated by CLEC, CL  § 12-1021 (j)(2).**

Excluded from the Class are (a) those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals, (b) any individual who was not a resident of the State of Maryland as of the date that his or her vehicle was repossessed; (c) any individuals against whom a judgment has been granted in favor of PRESTIGE on the account at issue on or before the date of the filing of this Complaint, (d) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of his or her Installment Contract;

and (e) any individual otherwise obligated on a RISC or other credit contract account that was satisfied in full more than six months prior to the filing of this Complaint.

51.     The Repossession Class, as defined above, is identifiable.  The Named Plaintiffs are members of the Repossession Class.

52.     The Repossession Class consists, at a minimum, of several hundred or thousands of persons who entered into credit contracts in Maryland which were assigned to PRESTIGE and whose vehicles were subsequently repossessed and sold, and is thus so numerous that joinder of all members is clearly impracticable.

53.     There are questions of law and fact which are not only common to the Repossession Class but which predominate over any questions affecting only individual class members.  The common and predominating questions include, but are not limited to:

(a) Whether PRESTIGE failed to provide pre-sale notices required by and compliant with CLEC, CL § 12-1021 (j)(1)(ii) to borrowers whose motor vehicles were repossessed;

(b) Whether PRESTIGE failed to provide the post-sale full accounting and disclosures required by and compliant with CLEC, CL § 12-1021 (j)(2) to borrowers whose motor vehicles were repossessed and sold at a private sale;

-15-

(c) Whether PRESTIGE knowingly violated CLEC provisions and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

(d) Whether PRESTIGE misrepresented or failed to disclose in writing to the Repossession Class the Defendant's right to collect funds from members of the Class;

(e) Whether PRESTIGE misrepresented in writing to the Repossession Class the vehicle's date of sale;

(f) Whether PRESTIGE failed to identify the date, time and location at which the vehicles of Repossession Class members would be sold on the date of sale;

(g) Whether PRESTIGE breached the credit contracts it accepted for each Repossession Class member by failing to comply with CLEC;

(h) Whether PRESTIGE assessed, attempted to collect and/or collected deficiency balances from members of the Repossession Class that it had no legal right to demand or collect, and for which the Repossession Class members were not liable; and

(i) Whether declaratory and injunctive relief is proper, to prevent PRESTIGE from continuing to seek deficiency balances or judgments in violation of CLEC and to compel PRESTIGE'S compliance with CLEC.

54.    Claims of the Named Plaintiffs are typical of the claims of the

respective members of the Class within the meaning of Maryland Rule 2-231(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of PRESTIGE. The prosecution of separate actions by individual members of the Repossession Class would create a risk of establishing incompatible standards of conduct for PRESTIGE, within the meaning of Maryland Rule 2-231(b)(1)(A).

55.     PRESTIGE'S actions are applicable to the Repossession Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of Maryland Rule 2-231(b)(2).

56.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Repossession Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Rule 2-231(b)(3). The likelihood that individual members of the Repossession Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and the fact that PRESTIGE affirmatively misrepresents to consumers what are the consumers' rights and obligations. Plaintiffs' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action. Named Plaintiffs are adequate and will fairly represent the interests of the Repossession Class in accordance with their affirmative obligations and fiduciary duties.

57.     Named Plaintiffs bring this action individually and on behalf of a second Class referred to as the "Lawsuit Class" which consists of:

**all persons against whom PRESTIGE filed a lawsuit in a Maryland Court seeking damages and as to whom PRESTIGE:**

    **(a)     included a copy of the Lawsuit Class Members' personal information including the Lawsuit Class Members' social security number, drivers license or other private personal information.**

Excluded from the Class are (a) those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals; and (b) any individual who was not a resident of the State of Maryland at the time the lawsuit was filed.

58.     The Lawsuit Class, as defined above, is identifiable. The Named Plaintiffs are members of the Lawsuit Class.

59.     The Lawsuit Class consists, at a minimum, of several hundred persons who entered into credit contracts in Maryland which were assigned to PRESTIGE and who were then sued in Maryland by PRESTIGE under the credit contracts. This Lawsuit Class is thus so numerous that joinder of all members is clearly impracticable.

60.     There are questions of law and fact which are not only common to the Lawsuit Class but which predominate over any questions affecting only

-18-

individual class members.  The common and predominating questions include, but are not limited to:

(a) Whether PRESTIGE included the social security numbers, drivers license numbers or other private information when it filed suit against the borrowers who were sued;

(b) Whether PRESTIGE engaged in an unfair and deceptive trade practice by disclosing the social security numbers, drivers license numbers or other private information of the Lawsuit Class;

(c) Whether declaratory and injunctive relief is proper, to force PRESTIGE to take corrective measures to redact this information from all lawsuits it has already filed and/or is currently prosecuting in Maryland, and to prevent PRESTIGE from continuing to disclose the social security numbers, drivers license number or other private information of the Lawsuit Class and to compel PRESTIGE'S compliance with Maryland law.

61.     Claims of the Named Plaintiffs are typical of the claims of the respective members of the Lawsuit Class within the meaning of Maryland Rule 2-231(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of PRESTIGE.  The prosecution of separate actions by individual members of the Lawsuit Class would create a risk of establishing incompatible standards of conduct for PRESTIGE, within the meaning of Maryland Rule 2-231(b)(1)(A).

-19-

62.     PRESTIGE'S actions are generally applicable to the respective Lawsuit Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of Maryland Rule 2-231(b)(2).

63.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Lawsuit Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Rule 2-231(b)(3).  The likelihood that individual members of the Lawsuit Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiffs' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.   Named Plaintiffs are adequate and will fairly represent the interests of the Lawsuit Class in accordance with their affirmative obligations and fiduciary duties.

**COUNT ONE**
**(MARYLAND CREDIT GRANTOR CLOSED END CREDIT**
**PROVISIONS)**
ON BEHALF OF THE REPOSSESSION CLASS

64.     Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

-20-

65.     Maryland's Credit Grantor Closed End Credit Provisions, CL § 12-
1001 *et seq.*, permit credit grantors such as PRESTIGE to provide closed end
credit under certain circumstances and subject to certain limitations, including
compliance with CLEC provisions relating to repossession and sale of motor
vehicles.  If a credit grantor timely provides a borrower with the required post-
repossession notices, accounting and disclosures mandated by CL § 12-1021 (j),
the credit grantor may obtain a deficiency judgment and retain the interest, costs,
fees and other charges assessed during the course of its extension of credit.  In
the event, however, that the credit grantor fails to provide the required timely
post-repossession notices, accounting and disclosures, the credit grantor may
not obtain a deficiency judgment (CL § 12-1021(k)(4)) and must forfeit all interest
charges, fees and other charges with respect to the loan (CL § 12-1018(a)(2)).

66.     In violation of CL § 12-1021 (j)(1)(ii), PRESTIGE failed to notify
Named Plaintiffs and members of the Repossession Class of the time and place
where their repossessed vehicles would be sold in writing by certified mail, return
receipt requested, sent to the borrower's last known address at least ten days
prior to the sale.

67.     In violation of CL § 12-1021 (j)(2), PRESTIGE failed to provide
Named Plaintiffs and members of the Repossession Class with a written full
accounting and the disclosures mandated by this statute after the private sale of
repossessed motor vehicles, including (1) a statement of the purchaser's name,

-21-

address, and business address; (2) a statement of the number of bids sought and received; and (3) a statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.

68.    PRESTIGE knowingly violated of CLEC, CL § 12-1021 (j), which makes it subject to mandatory trebling under CL § 12-1018(b).

### COUNT TWO
### (BREACH OF CONTRACT)
ON BEHALF OF REPOSSESSION CLASS

69.    Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

70.    Maryland's Credit Grantor Closed End Credit Provisions law was in effect at the time the credit contracts of Named Plaintiffs and all members of the Repossession Class were signed by them and assigned to PRESTIGE.  The provisions of the CLEC statute become a part of the contract just as if the parties expressly included the CLEC provisions in their credit contracts. In addition, PRESTIGE explicitly referred to and incorporated the CLEC in its contracts with Named Plaintiffs and the other members of the Repossession Class.

71.    When PRESTIGE violated CLEC as set forth above, PRESTIGE materially breached its contracts with Named Plaintiffs and the members of the Repossession Class.

72.    As a result of PRESTIGE'S breaches of contract with Named

-22-

Plaintiffs and members of the Repossession Class, Named Plaintiffs and members of the Repossession Class have been damaged. Named Plaintiffs and members of the Repossession Class have been deprived of the substantial rights granted to them by CLEC, including (1) the right to know when and where the sale of their vehicle would take place, (2) the ability to fully evaluate whether to reinstate their account or redeem their vehicle, (3) the information needed to evaluate whether PRESTIGE'S demand for payment of the alleged deficiency was reasonable, (4) the information needed to determine whether the sale of the vehicle was commercially reasonable, (5) the ability to determine whether there should have been surplus funds available for return by PRESTIGE, (6) the information needed to defend against any suit for a deficiency judgment. In addition, Named Plaintiffs and the Repossession Class also sustained financial damages as a result of PRESTIGE'S failure to return all of the interest, costs, fees and other charges collected on their loans, and Named Plaintiffs and the Repossession Class sustained other damages and losses.

## COUNT THREE
### (DECLARATORY AND INJUNCTIVE RELIEF)
ON BEHALF OF REPOSSESSION CLASS

73.    Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

74.     This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Named Plaintiffs and members of the Repossession Class and the consumer protections embodied in Maryland's Credit Grantor Closed End Credit Provisions.

75.     PRESTIGE maintains it may collect a deficiency balance from Named Plaintiffs and members of the Repossession Class even though PRESTIGE failed to provide Named Plaintiffs and members of the Repossession Class with  timely and complete post-repossession notices required by Maryland's Credit Grantor Closed End Credit Provisions.

76.     Named Plaintiffs and members of the Class have received or will receive collection notices from PRESTIGE and/or debt collectors demanding payment of the alleged deficiency balance, and have been sued or will be sued for collection of the sums which PRESTIGE claims are due.  Moreover, on information and belief, PRESTIGE also notifies credit reporting agencies to which it reports (including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and history of Named Plaintiffs and the Repossession Class.

77.     These practices continue and will continue unless and until this Court declares and affirms that PRESTIGE may not collect any alleged

-24-

deficiency balance unless PRESTIGE has provided Named Plaintiffs and members of the Repossession Class with timely and complete notices containing the information whose disclosure is mandated by CLEC.

78.   This presents an actual, justiciable controversy between the parties relating to the construction of the credit contract of Named Plaintiffs and members of the Repossession Class and the application of Maryland's Credit Grantor Closed End Credit Provisions to those contracts because PRESTIGE has sought or likely will seek to collect on the alleged deficiency balances, including through filing a collection action in court, and PRESTIGE continues to harm Named Plaintiffs and members of the Repossession Class by reporting false and derogatory information to credit reporting agencies regarding the accounts in question.

79.   Named Plaintiffs and members of the Repossession Class have a right to be free from PRESTIGE'S attempts to collect deficiency balances, interest, fees, costs and other charges which are not collectible as a matter of law and under the terms of its contracts with Named Plaintiffs and members of the Repossession Class.

80.   The benefits to Named Plaintiffs and members of the Repossession Class in obtaining an injunction outweigh any potential harm PRESTIGE would incur as a result of an injunction, under the balance of the harms test, as PRESTIGE has no legal or contractual right to collect deficiency balances from

Named Plaintiffs or members of the Repossession Class, and Named Plaintiffs and members of the Repossession Class would greatly benefit from being relieved of PRESTIGE'S attempts to collect these illegal charges.

81.    Named Plaintiffs and members of the Repossession Class will suffer irreparable injury unless the requested injunctions are granted, as PRESTIGE will continue to attempt to collect, and collect, deficiency balances, interest, costs, fees and other charges from them in violation of the law, and PRESTIGE will report erroneous and derogatory information to the credit reporting agencies regarding Named Plaintiffs and members of the Repossession Class based on the illegally imposed charges.

82.    The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing PRESTIGE from violating the statutory and common law of the State of Maryland in its repossession and/or collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

83.    Named Plaintiffs and members of the Repossession Class are likely to succeed on the merits of this action, as the CLEC explicitly requires that PRESTIGE send specific and mandatory notices which comply with the statute to Named Plaintiffs and members of the Repossession Class, which it did not send.

**COUNT FOUR**
**(RESTITUTION AND UNJUST ENRICHMENT)**
ON BEHALF OF THE REPOSSESSION CLASS

84.   Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

85.   By paying money on deficiency balances, interest, fees, costs and other charges claimed by PRESTIGE, Named Plaintiffs and members of the Repossession Class conferred a benefit of these illegally collected charges upon PRESTIGE.

86.   PRESTIGE accepted the benefits conferred upon them by Named Plaintiffs and members of the Repossession Class when they accepted the money paid toward illegally assessed deficiency balances, interest, costs, fees and other charges.  Further, PRESTIGE was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

87.   PRESTIGE'S collection, acceptance and retention of these charges, when it was not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and PRESTIGE has not refunded the charges to Named Plaintiffs or members of the Repossession Class.  PRESTIGE should not be permitted to retain the benefits of those illegal charges. PRESTIGE'S continued withholding of the illegal charges is improper.

88.   Named Plaintiffs and members of the Repossession Class conferred these unjust benefits upon PRESTIGE after and as a result of PRESTIGE'S illegal misconduct as set forth herein.

## COUNT FIVE
### (MARYLAND CONSUMER PROTECTION ACT)

ON BEHALF OF THE REPOSSESSION CLASS

89.    Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

90.    Maryland's Consumer Protection Act ("CPA"), Md. Comm. Law Code Ann., § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices regarding, among other things, the extension of consumer credit and in the collection of consumer debts.  CL § 13-303(3) and (4).

91.    As a "person" under the CPA, CL § 13-101(h), PRESTIGE is prohibited from engaging in unfair and deceptive trade practices.

92.    The CPA specifically prohibits PRESTIGE from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers (CL § 13-301(1)).

93.    The CPA further prohibits PRESTIGE from failing to state a material fact if the failure deceives or tends to deceive (CL § 13-301(3)).

94.    In violation of the CPA, CL § 13-303(3) - (4) and § 13-301(1) and (3), PRESTIGE told Named Plaintiffs and members of the Repossession Class in writing that their vehicles would be sold on an unspecified date, at an unspecified time, in an unspecified location, thereby, among other things, misrepresenting the final date up to which the vehicle could still be redeemed.  Further,

-28-

PRESTIGE notified Named Plaintiffs and members of the Repossession Class in writing that Named Plaintiffs and members of the Repossession Class owed PRESTIGE deficiency balances which, in fact, Named Plaintiffs and members of the Repossession Class did not owe and which PRESTIGE could not collect, due to its failures to comply with the law. These written statements were false and misleading and tended to and did deceive Named Plaintiffs and members of the Repossession Class, many of whom made payments to PRESTIGE which were not due and owing.

95.    In violation of the CPA, CL § 13-303(3) - (4) and § 13-301 (1) and (3) and, PRESTIGE failed to disclose to Named Plaintiffs and members of the Repossession Class the date and time of sale, and the material facts that PRESTIGE did not have the right to collect a deficiency judgment. This failure to disclose material facts led Named Plaintiffs or members of the Repossession Class to make payments which were not due and which they would not have made had PRESTIGE informed them of the material facts.

96.    PRESTIGE committed unfair and deceptive practices by collecting and attempting to collect on alleged debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101 *et seq.*, including CL §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

97.    As a result of PRESTIGE'S unfair and deceptive trade practices in violation of the CPA, Named Plaintiffs or members of the Repossession Class

-29-

were induced to make payments to PRESTIGE on alleged deficiency balances, causing Named Plaintiffs or members of the Repossession Class injury or loss.

98.   In violation of the CPA, CL § 13-303(3) - (4) and § 13-301(1) and (3), and as part of an effort to compel Named Plaintiffs and members of the Repossession Class to make payments which were not due, PRESTIGE made false and misleading reports to credit reporting agencies regarding the amounts which Named Plaintiffs and members of the Repossession Class owed on their accounts.

WHEREFORE, Plaintiffs pray that the following relief be granted to the Named Plaintiffs and the Repossession Class:

A.   The Court enter a declaratory judgment establishing that PRESTIGE may not collect any claimed deficiency balance, or any interest, fees, costs or other charges on a loan account of Named Plaintiffs and members of the Repossession Class;

B.   The Court enter an order granting Named Plaintiffs and members of the Repossession Class a preliminary and permanent injunction prohibiting PRESTIGE from collecting or attempting to collect alleged deficiency balances, or interest, fees, costs or other charges from Named Plaintiffs and members of the Repossession Class;

C.   The Court enter an order requiring PRESTIGE within 30 days to

notify all credit reporting agencies to whom it reports that (i) Named

Plaintiffs and members of the Repossession Class have a zero

balance on their accounts, and (ii) removing any notation to the

effect that the account has been charged off;

D.     The Court order that PRESTIGE pay to Named Plaintiffs and

members of the Repossession Class the statutory penalties

imposed by CLEC, CL  § 12-1018(a)(2) by returning to Named

Plaintiffs and members of the Repossession Class all sums each

paid as interest, costs, fees or other charges;

E.     The Court enter judgment in favor of Named Plaintiffs and

members of the Repossession Class against PRESTIGE in the

amount of all sums paid by Named Plaintiffs and members of the

Repossession Class toward the claimed deficiency balance,

interest, fees, costs and other charges;

F.     Pursuant to CL § 12-1018(b), the Court enter judgment in favor of

Named Plaintiffs and members of the Repossession Class against

PRESTIGE in an amount three times the interest, costs, fees, and

other charges which PRESTIGE collected in excess of that allowed

by CLEC;

G.     The Court enter an award of pre-judgment and post-judgment

interest on all sums award to Named Plaintiffs and members of the

Repossession Class;

H.     The Court award to Named Plaintiffs and members of the

Repossession Class reasonable counsel fees and the costs of

these proceedings; and,

I.     The Court order such other and further relief as the nature of this

case may require.

J.      In order to comply with recent Maryland case law, taking into

consideration treble damages, cancellation of alleged debt, and

compensatory damages for injuries or losses, the *ad damnum*

clause at this time, subject to later modification upon further

discovery as to the size of the class, is $60,000,000 (Sixty Million

Dollars).

**COUNT SIX**
**(MARYLAND CONSUMER PROTECTION ACT)**
ON BEHALF OF LAWSUIT CLASS

99.     Named Plaintiffs re-allege and incorporates by reference the

allegations set forth above, and further alleges:

100.    Maryland's Consumer Protection Act ("CPA"), Md. Comm. Law

Code Ann., § 13-101 *et seq.*, provides that a violation of Md. Code Ann. CL § 14-

3402 constitutes an unfair and deceptive trade practice.

101.    PRESTIGE violated the CL § 14-3402 when it publicly disclosed the

social security numbers of the Lawsuit Class.

-32-

102.   PRESTIGE violated the CL § 14-3502 and 3503 when it failed to maintain and implement procedures to safeguard the drivers' license numbers, account numbers and other private information of the Named Plaintiffs and the Lawsuit Class. In fact, PRESTIGE knowingly and willfully made the information publicly available when it filed it with the lawsuits.

103. The violation of CL §§ 14-3401 *et seq* and 14-3501 *et seq* constitute per se violations of the Maryland Consumer Protection Act.  (See CL § 13-301(14)(xxi) and CL § 14-3508).

104.   As a result of PRESTIGE'S unfair and deceptive trade practices in violation of the CPA, Named Plaintiffs and members of the Lawsuit Class have been damaged and suffered injury or loss.

105.   To protect themselves, Named Plaintiffs and the Lawsuit Class will have or will incur expenses in connection with the monitoring of their credit information.

## COUNT SEVEN
### (DECLARATORY AND INJUNCTIVE RELIEF)
ON BEHALF OF LAWSUIT CLASS

106. Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

107. This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legality

of the Defendant's disclosure of the social security numbers, drivers license numbers or other private information of the Named Plaintiffs and members of the Lawsuit Class.

108. Named Plaintiffs and members of the Lawsuit Class have had their private information divulged and placed in public records by PRESTIGE, and therefore they have suffered an illegal invasion of privacy, are vulnerable to the identity theft and other injuries or losses.

109. This dangerous and illegal practice of divulging highly confidential information continues and will continue unless and until this Court declares and affirms that PRESTIGE may not divulge the private information of the Named Plaintiffs and members of the Lawsuit Class.

110. This presents an actual, justiciable controversy between the parties relating to the disclosure of the Named Plaintiffs and members of the Lawsuit Class and the application of Maryland law, CL §§ 13-101 *et seq*, 14-3401 *et seq*, and 14-3501 *et seq* because PRESTIGE has divulged and continues to divulge the private information of the Named Plaintiffs and members of the Lawsuit Class.

111. Named Plaintiffs and members of the Lawsuit Class have a right to stop PRESTIGE from illegally divulging their private information.

112. The benefits to Named Plaintiffs and members of the Lawsuit Class in obtaining an injunction outweigh any potential harm PRESTIGE would incur as

a result of an injunction, under the balance of the convenience test, as PRESTIGE has no legal or contractual right to divulge the Named Plaintiffs and the Lawsuit Class' private information and Named Plaintiffs and members of the Lawsuit Class would greatly benefit from being relieved of PRESTIGE'S divulging their private information.

113.   Named Plaintiffs and members of the Lawsuit Class will suffer irreparable injury unless the requested injunctions are granted, as PRESTIGE will continue to divulge their private information.

114.   The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing PRESTIGE from violating the statutory and common law of the State of Maryland when filing lawsuits, and a compelling interest in seeing the laws of the State of Maryland obeyed.

115.   Named Plaintiffs and members of the Lawsuit Class are likely to succeed on the merits of this action, as Maryland law prohibits the disclosures being made by PRESTIGE.

WHEREFORE, Plaintiffs pray that the Court grant the following relief to the Named Plaintiffs and the Lawsuit Class:

A.   The Court enter a declaratory judgment establishing that PRESTIGE'S disclosure of the private information of Named Plaintiffs and members of the Lawsuit Class is illegal;

B.   The Court enter an order granting Named Plaintiffs and members of the Lawsuit Class a preliminary and permanent injunction prohibiting PRESTIGE from divulging the private information of the Named Plaintiffs and members of the Lawsuit Class;

C.   The Court enter judgment in favor of Named Plaintiffs and the Class against PRESTIGE for the injury or loss sustained and for such compensatory damages as the evidence shall warrant including the costs of monitoring that will be incurred by the Named Plaintiffs and members of the Lawsuit Class as a result of the Defendant's disclosure of their private information in public records;

D.   The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to Named Plaintiffs and members of the Class;

E.   The Court award to Named Plaintiffs and members of the Class reasonable counsel fees and the costs of these proceedings; and,

F.   The Court order such other and further relief as the nature of this case may require.

G.   In order to comply with recent Maryland case law, taking into consideration compensatory damages for injuries or losses (including for the danger of identity theft and prevention thereof by monitoring for the Named Plaintiffs and the members of the Lawsuit

Class, the *ad damnum* clause at this time, subject to later

modification upon further discovery as to the size of the class, is

$3,000,000 (Three Million Dollars).


Respectfully submitted,

By: _____

Peter A. Holland
THE HOLLAND LAW FIRM, P.C.
Clock Tower Place
1410 Forest Drive, Suite 21
Annapolis, Maryland 21403
(410) 280-6133
FAX: 410-280-8650

Scott C. Borison
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick MD 21703
T: (301) 620-1016
F: (301) 620-1018

Attorneys for Named Plaintiffs and the Repossession and Lawsuit
Classes.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury.

_____
Peter A. Holland

-37-

| Buyer (and Co-Buyer) Name and Address (including County and Zip Code) | Creditor - Seller (Name and Address) |
|---|---|
| TANYA YVONNE MILLER<br>KEVIN VINCENT MILLER<br>10312 GRAYSTONE DR<br>UPPER MARLBORO MD 20772 | EASTERN AUTO OUTLET OF WALDORF<br>4426 CRAIN HIGHWAY<br>WHITE PLAINS MD 20695 |
| Dealer Number _____ | Contract Number 121494 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2003 | CHEVROLET TRUCK<br>TRAILBLAZER | 1GNET16S836162494 | ☐ personal, family or household<br>☐ business<br>☐ agricultural   [X] PERSONAL |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1600.00 |
|---|---|---|---|---|
| 12.99 % | $ 8936.04 | $ 21700.50 | $ 30636.54 | $ 31636.54 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 66 | 464.19 | Monthly beginning 08/08/2005 |

Or As Follows:

Late Charge. If payment is not received in full within 15 days after it is due, you will pay a late charge of $ 5 or 10 % of the part of the payment that is late, whichever is greater.

Prepayment. If you pay off all your debt early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1 Cash Price
A Cash Price of Motor Vehicle and Accessories ........... $ 20558.00 (A)
  1. Cash Price Vehicle
  2. Cash Price Accessories
B Sales Tax ........... $ 1032.50 (B)
C Service Contract (optional) ........... $ 780.00 (C)
  (Seller may keep part of this amount)
  *See Service Contract Box below
D Debt Cancellation Agreement (optional) ........... $ N/A (D)
E Dealer Processing Charge (not required by law) ........... $ 100.00 (E)
F Freight Charge ........... $ N/A (F)
G Other ........... $ N/A (G)
  To Whom Paid N/A
H Other ........... $ N/A (H)
  To Whom Paid N/A
Total Cash Price ........... $ 22462.50 (1)

2 Total Downpayment =
  Trade-in _____ _____ _____
  (Year)  (Make)  (Model)
  Gross Trade-In Allowance $ N/A
  Less Pay Off Made By Seller $ N/A
  Equals Net Trade In $ N/A
  + Cash $ 1600.00
  - Other N/A $ N/A
  (if total downpayment is negative, enter "0" and see 4H below) $ 1600.00 (2)
3 Unpaid Balance of Cash Price (1 minus 2) $ 21462.50 (3)
4 Other Charges Including Amounts Paid to Others on Your Behalf
  (Seller may keep part of these amounts)

---

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is required is checked below. Your decision to buy or not to buy other insurance will not be a factor in the credit approval process.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
### Optional Credit Insurance
☐ Credit Life   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability (Buyer Only)
Premium:
  Credit Life $ N/A
  Credit Disability $ N/A
Insurance Company Name N/A
Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay off all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Insurance
☐ N/A
  Type of Insurance N/A   Term N/A
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A
I want the insurance checked above.
X _____ _____
Buyer's Signature   Date
X _____ _____
Co-Buyer's Signature   Date

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY

PLAINTIFF'S EXHIBIT

| | | |
|---|---|---|
| A* Cost of Optional Credit Insurance Paid to | | N/A |
| Company | | |
| Life | $ | N/A |
| Disability | $ | N/A |
| B Vendor's Single Interest Insurance | | |
| Paid to Insurance Company | $ | N/A |
| C Other Insurance Paid to the Insurance Company | $ | N/A |
| D Official Fees Paid to Government Agencies | $ | N/A |
| E Taxes Not Included in Cash Price | $ | N/A |
| F Government License and/or Registration Fees | | |
| LIC/LIEN/TEMP TAG | $ | 215.00 |
| G Government Certificate of Title Fees | $ | 23.00 |
| H Other Charges (Seller must identify who is paid and | | |
| describe purpose) | | |
| to N/A      for Prior Credit or Lease Balance | $ | N/A |
| to N/A      for N/A | $ | N/A |
| to N/A      for N/A | $ | N/A |
| to N/A      for N/A | $ | N/A |
| to N/A      for N/A | $ | N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 238.00 (4) |
| 5 Amount Financed (3 + 4) | $ | 21700.50 (5) |

**VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If this preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in item 4B of the ITEMIZATION OF AMOUNT FINANCED. The coverage is for the initial term of the contract.

**GAP PROTECTION.** Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless you sign here below and agree to pay the additional cost shown below and in item 4(G) of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of your choice that is authorized to sell such coverage and is acceptable to us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If you want GAP protection, sign below.

Cost $ _____ N/A _____ Term: _____ N/A _____ Provider: _____ N/A _____

X _____        X _____
Buyer              Date              Co-Buyer           Date

| | |
|---|---|
| **SUCH INSURANCE YOU MAY NOT OBTAIN** | |
| Returned Check Charge: You agree to pay a charge of $ _____ 15.00 _____ if any check you give us is dishonored on the second presentment. | |
| You Request an optional Debt Cancellation Agreement to be provided by someone other than the Seller. The purchase of a Debt Cancellation Agreement is not required to obtain credit. The cost of the Debt Cancellation Agreement (also shown in item 1D of the Itemization of Amount Financed) is _____ $ _____ N/A _____ | |

X _____
Date      Buyer

X _____
Date      Co-Buyer

**'SERVICE CONTRACT:** (Optional) You request a service contract written with the following company for the term below. The cost is shown in item 1C of the Itemization of Amount Financed.

Company __GE__

Term __24__ Months

Buyer X _Tawn Miller_

Co-Buyer X _Fern V. Mille_

OPTION: ☐ You pay no finance charge if the amount financed, item 5, is paid in full on or before _____ , Year _____ . SELLERS INITIALS _____

---

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _Tawn K Miller_   Co-Buyer Signs X _Fern V. Mille_
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _Tawn Miller_ Date 06/24/05  Co-Buyer Signs X _Fern E. Mille_ Date 06/24/05

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____
Seller signs EASTERNS AUTO OUTLET OF WALDO Date 05/24/05 By X _Ckmbe_ Address _____ Title _TC_

Seller assigns its interest in this contract to PRESTIGE FINANCIAL _____ (Assignee) under the terms of Seller's agreements with Assignee.

☐ Assigned with recourse       ☐ Assigned without recourse       ☐ Assigned with limited recourse
EASTERNS AUTO OUTLET OF WALDORF _____ _Ckmbe T/C_ CKUNBE T/C
Seller          By          Title

LAW FORM NO. 553-MD

CUSTOMER / TRUTH-IN-LENDING COPY

1. FINANCE CHARGE AND PAYMENTS

a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. YOUR OTHER PROMISES TO US

a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. Security Interest.
You give us a security interest in:
• The vehicle and all parts or goods installed in it;
• All money or goods received (proceeds) for the vehicle;
• All insurance, maintenance, service, or other contracts we finance for you; and
• All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. Insurance you must have on the vehicle.
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and charge you must pay. The charge will be the cost of the insurance and a

3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you keep making late payments. If you pay late, we may also take the steps described below.

b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
• You do not pay any payment on time;
• You start a proceeding in bankruptcy or one is started against you or your property; or
• You break any agreements in this contract.
The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. You may have to pay collection costs. If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as permitted by law.

d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. We may take (repossess) the vehicle with or without judicial proceedings. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for those items back, we may dispose of them as the law allows.

e. How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. WARRANTIES SELLER DISCLAIMS
You understand that the Seller is not offering any express warranties unless: (i) the Seller extends a written warranty; or (ii) the window form for a used or demonstration vehicle indicates that the Seller is giving express warranties.

imping charge, if the Seller ... ventura rate shown on the front of this contract.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. What happens to returned insurance, maintenance, service, or other contract charges. If we obtain a refund of insurance, maintenance, service, or other contracts, we may subtract the refund from what you owe.

In addition, there ar ... implied warranties or other implied warranties of the Seller covering the Vehicle unless: (i) the Seller extends a written warranty; (ii) within 90 days from the date of this Contract, you enter into a service contract with the Seller which applies to the Vehicle being purchased; (iii) the Vehicle is of a type obtained primarily for personal, family or household use; or (iv) the window form for a used or demonstration Vehicle states that the Seller is giving implied warranties. To the extent permitted by applicable law, the Seller shall have no responsibility to you or to any other person with respect to any interruption of service, loss of business or anticipated profit or consequential damages.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **Applicable Law** Federal law and Maryland law and specifically Subtitle 10 of Title 12 of the Commercial Article of the Maryland Code apply to this Contract.

NOTICE TO BUYER(S) OF NEW VEHICLES: IF YOU ARE PURCHASING A NEW VEHICLE WHICH IS SUBJECT TO A MANUFACTURER'S EXPRESS WARRANTY AND THE VEHICLE DOES NOT CONFORM TO THAT WARRANTY DURING THE WARRANTY PERIOD, YOU MUST GIVE WRITTEN NOTICE OF THE NONCONFORMITY, DEFECT OR CONDITION TO THE MANUFACTURER OR FACTORY BRANCH DURING THE WARRANTY PERIOD BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, IN ORDER TO PRESERVE YOUR RIGHTS UNDER THE MARYLAND AUTOMOTIVE WARRANTY ENFORCEMENT ACT.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-MD 12/01

289006

# PRESTIGE *financial*

Repo Letter

November 14, 2008

KEVIN MILLER
10012 GRAYSTONE DR
UPPER MARLBORO MD 2077

Account Number:    289026

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

Dear KEVIN MILLER:

Prestige Financial has exercised its legal right to repossess your vehicle. To redeem this vehicle, you must deliver certified funds made payable to Prestige Financial for the total amount due plus daily interest charges within the next 15 days of the date of this letter.

| | |
|---|---|
| Date Repossessed: | November 14, 2008 |
| Vehicle Description: | 2003 Chevrolet TrailBlazer |
| VIN: | 1GNET16S836162494 |
| Principal Balance: | $9,200.25 |
| Unpaid Interest: | $2,220.41 |
| Unpaid Loan Fees: | $463.00 |
| Repossession Expenses: | $450.00 |
| Total Amount Due: | $12,333.66 |
| Daily Interest Charge: | $3.27 |

If you have not redeemed the vehicle by the end of the 15-day period, we will advertise the vehicle for sale, or sell it at a private auction for the highest bid amount. Once the vehicle has been sold and the proceeds applied to your account, you will be notified of the deficiency balance. You must immediately pay the deficiency balance in full, or make acceptable payment arrangements with us. Failure to do so will result in immediate legal action. If legal action becomes necessary to collect the deficiency balance, you will be responsible for attorney fees and court costs. If you had personal property in the vehicle, you must make arrangements to claim this property within 10 days of the date of this letter. If you fail to claim your personal property, we will not take responsibility for its return.

Sincerely,

Prestige Financial
Inventory Control Department
888-822-7422

**Credit Reporting Disclosure**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

1420 South 500 West  84115    P.O. Box 26707  84126    Salt Lake City, UT
Tel (801) 844-2100     Fax (801) 844-2600    GoPFS.com

050422-COL001-04-CER1   #1061063


PLAINTIFF'S
EXHIBIT
2

289026

## PRESTIGE*financial*

Repo Letter

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006 · · See Reverse for Instructions

November 14, 2008

TANYA MILLER
10012 GRAYSTONE DR
UPPER MARLBORO MD 2077

Account Number:  289026

Dear TANYA MILLER:

Prestige Financial has exercised its legal right to repossess your vehicle. To redeem this vehicle, you must deliver certified funds made payable to Prestige Financial for the total amount due plus daily interest charges within the next 15 days of the date of this letter.

| | |
|---|---|
| Date Repossessed: | November 14, 2008 |
| Vehicle Description: | 2003 Chevrolet TrailBlazer |
| VIN: | 1GNET16S836162494 |
| Principal Balance: | $9,200.25 |
| Unpaid Interest: | $2,220.41 |
| Unpaid Loan Fees: | $463.00 |
| Repossession Expenses: | $450.00 |
| Total Amount Due: | $12,333.66 |
| Daily Interest Charge: | $3.27 |

If you have not redeemed the vehicle by the end of the 15-day period, we will advertise the vehicle for sale, or sell it at a private auction for the highest bid amount. Once the vehicle has been sold and the proceeds applied to your account, you will be notified of the deficiency balance. You must immediately pay the deficiency balance in full, or make acceptable payment arrangements with us. Failure to do so will result in immediate legal action. If legal action becomes necessary to collect the deficiency balance, you will be responsible for attorney fees and court costs. If you had personal property in the vehicle, you must make arrangements to claim this property within 10 days of the date of this letter. If you fail to claim your personal property, we will not take responsibility for its return.

Sincerely,

Prestige Financial
Inventory Control Department
888-822-7422

---

### Credit Reporting Disclosure
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

1420 South 500 West  84115   P.O. Box 26707  84126   Salt Lake City, UT
Tel (801) 844-2100    Fax (801) 844-2600   GoPFS.com

050422-COLD01-04-CERT   #1001083

289026-R



# PRESTIGE*financial*
You deserve auto credit this easy

December 30, 2008

TANYA MILLER
KEVIN MILLER
10012 GRAYSTONE DR
UPPER MARLBORO MD 20772

| | |
|---|---|
| Account Number: | 289026 |
| Vehicle: | 2003 Chevrolet TrailBlazer |
| VIN: | 1GNET16S836162494 |
| Vehicle Sale Date: | December 31, 2008 |
| Vehicle Sale Location: | Fredericksburg |
| Vehicle Sale Proceeds: | $3,232.00 |
| Payoff Balance: | $8,958.95 |

Dear TANYA MILLER and KEVIN MILLER:

Pursuant to the letters and notices previously mailed to you, the vehicle pledged as security for the above-captioned loan has been sold.

The payoff amount has already been reduced by the vehicle sales proceeds, but may change based on future debits, credits, charges, interest, rebates or other expenses. Please remit $8,958.95 to Prestige Financial at the address below **within ten (10) days**, or contact our office to make payment arrangements. **Failure to do so may result in immediate legal action.** If legal action becomes necessary to collect the deficiency balance, you will be responsible for attorney fees, court costs, and any additional collection expenses.

Sincerely,

Prestige Financial
Recovery Department
888-286-2216

---

**Credit Reporting Disclosure**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

1420 South 500 West 84115   P.O. Box 26707 84126   Salt Lake City, UT
Tel (801) 844-2100   Fax (801) 844-2600   GoPFS.com

080523-RECC001.04   #1135710



**PLAINTIFF'S
EXHIBIT
3**