**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

TANYA MILLER, et al.                              *

    Plaintiffs                                *          Civil Action No.  L-09-1671

       v.                                  *

PRESTIGE FINANCIAL SERVICES, INC.      *

    Defendant                             *

                              *

   *    *    *    *    *    *    *    *    *    *    *    *

**DEFENDANT PRESTIGE'S REPLY TO PLAINTIFFS' OPPOSITION TO ITS MOTION TO
COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

      **1.**     **The Parties Agreed to an Arbitration Provision That Covers
              The Post-Repossession Violations Alleged by Plaintiffs**

The arbitration provision broadly covers all disputes, claims, or controversies.

> ARBITRATION TERMS. The parties agree that <u>all</u> <u>disputes,</u> <u>claims</u> <u>or</u> <u>controversies</u> arising from or relating to the Purchaser's purchase of the Vehicle, the Agreement or the relationship which result from the Agreement, or the validity of this arbitration clause or the Agreement shall be resolved by binding arbitration by one arbitrator located in the Dealer's area in the state of Maryland selected by the Dealer (or the assignee of any Retail Installment Sales Contract) with the consent of the Purchaser . . . . the parties agree and understand that <u>all</u> <u>disputes</u> <u>arising</u> <u>under</u> <u>Case</u> <u>Law,</u> <u>statutory</u> <u>law,</u> <u>and</u> <u>all</u> <u>other</u> <u>laws,</u> <u>including</u> <u>but</u> <u>not</u> <u>limited</u> <u>to</u> <u>all</u> <u>contract,</u> <u>tort</u> <u>or</u> <u>property</u> <u>disputes</u>, will be subject to binding arbitration in accordance with terms herein.

See **EXHIBIT A** to Motion to Compel (emphasis added).[1]   Plaintiffs do not contest that they agreed to this arbitration provision.  See Plaintiffs' Opposition to Motion to Compel.

Plaintiffs' Complaint contains claims of statutory and common law violations by Prestige <u>after</u> <u>their</u> <u>vehicle</u> <u>had</u> <u>been</u> <u>repossessed</u>.  Plaintiffs allege that Prestige's post-repossession letters did not give adequate notice and disclosures relating to the auction and sale of their vehicle and that Prestige collected and/or seeks to collect excessive interest, fees, and other charges.  See Complaint, Counts One to Six.  Plaintiffs further allege that Prestige publicly disclosed their Social Security numbers.  See Complaint, Counts Six and Seven.   All of these claims are covered by the arbitration provision.

"[T]he principal evidence of the parties' intentions [to arbitrate] is the language of their contract."  *Essex Corporation v. Susan Katherine Tate Burrowbridge, LLC et al.*, 178 Md.App. 17, 31 (2008).  Plaintiffs executed an arbitration provision covering all disputes, claims, or, controversies arising from or relating to the Purchaser's purchase of the vehicle.

The Federal Arbitration Act requires this Court to compel arbitration on the issues to which an arbitration agreement has been signed.   In *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985), the Supreme Court held

> [The Act] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed.

*Supra,* 470 U.S. at 218 (1985).

Plaintiffs do not contest the validity of the arbitration agreement.  They do not deny that they agreed to it.   The matters before this Court relating to the post-repossession sale

---

[1] The entire arbitration provision is set forth on the third page of **EXHIBIT A** after paragraph 17 of the Buyer's Order.

of the vehicle clearly arise from, and relate to, the "purchase of the vehicle."   Plaintiffs'
claims fall within the broad scope of the arbitration agreement.

### 2.      The Arbitration Clause Does Not Exempt Plaintiffs' Post-Repossession Claims and Allegations

Plaintiffs argue that the issues presented by their Complaint are exempted by the plain language of the arbitration provision.   Plaintiffs are mistaken, even though these are two exclusions from arbitration.   Plaintiffs rely on language in the arbitration provision stating that (a) Plaintiffs' failure to pay, and (b) Prestige's right to repossess are not disputes subject to arbitration. See Plaintiffs' Opposition at 3.   These exclusions in the arbitration provision, however, do not apply.   Plaintiffs' failure to pay consideration and Prestige's right to repossess are not issues raised by the Complaint or to be decided by arbitration.

The exclusions in the arbitration provision on which Plaintiffs rely are:

> [P]rovided, however, that your failure to provide consideration to be paid by you . . . as well as our right to retake possession of the vehicle to pursuant to this Buyer's Order shall not be considered a Dispute and not be subject to arbitration.

Plaintiffs' Opposition at 3; **EXHIBIT A,** Motion to Compel (Arbitration Terms).

With respect to the failure to provide consideration exclusion, this language is consistent with the exception earlier in the Arbitration Terms excepting Prestige's right to bring a court action in the event the Plaintiffs failed to pay.

> The parties understand that they have a right or opportunity to litigate disputes through a Court, but that they prefer to resolve their disputes through arbitration, <u>except that the Dealer (or the Assignee of any Retail Installment Sale Contract) may proceed with Court action in the event the Purchaser fails to pay any sum due under the Agreement.</u>

See **EXHIBIT A**, Motion to Compel (Arbitration Terms).   Moreover, Plaintiffs' in their Complaint do not contemplate any recovery by Prestige of consideration due from Plaintiffs.  The exclusion from arbitration for Plaintiffs' failure to provide consideration is not applicable.

With respect to the right to retake possession of the vehicle, Plaintiffs do not contest that Prestige has this right.  See Paragraph 33 of Complaint in which the seizure and repossession of Plaintiffs' vehicle is alleged without any challenge to Prestige's right to do so.  Plaintiffs' claims and allegations deal with the post-repossession auction and sale of their vehicle.  See e.g., paragraph 37 of Complaint setting forth statutory provisions governing sale and auction of a repossessed vehicle; paragraphs 34, 36, 38, 39 of Complaint dealing with pre-sale notice and/or post-sale notice.  Plaintiffs list in paragraph 53 of their Complaint the common and predominating questions presented by their Complaint. Nothing on the list questions Prestige's right to repossess the vehicle. Finally, none of the relief requested by Plaintiffs in their Complaint seeks to rectify or set aside the repossession of their vehicle. From Plaintiffs' Complaint it is clear that the exclusion from arbitration of Prestige's right to repossess the vehicle is not applicable.

The arbitration provision is enforceable under Maryland law.

> [T]here is no requirement that the consideration for one party's obligation to arbitrate all issues under a contract be the other party's obligation to arbitrate all issues under that contract.

*Lackey v. Green Tree Financial Corp.*, 330 S.C. 388, 402 (1998).  It makes no difference that Prestige's right to repossess is not subject to the arbitration provision.

Maryland law recognizes the reasonableness of carving out certain rights for secured creditors. See *Walther v. Sovereign Bank*, 386 Md. 412, 433-436 (2005).  There

are valid justifications for carving-out secured transactions from arbitration agreements. Lenders can take greater risks because their ability to protect a loan is enhanced by the right to repossess.  *Id.* at 435 quoting *Lackey v. Green Tree Financial Corp.*, 330 S.C. 388 (1998).  Contracts containing arbitration provisions do not require mutuality of remedy. See *Lackey v. Green Tree Financial Corp.*, 330 S.C. 388, 401 (1998).  Here, the right to repossess was important for Prestige to loan money to Plaintiffs.

### 3.  Plaintiffs' "Single Document Rule" Does Not Apply to This Case

Plaintiffs argue that a "single document rule" limits the Plaintiffs' agreement to the Retail Installment Sale Contract ("RISC").  Plaintiffs cite no Maryland court decision or other Maryland authority articulating a "single document rule," yet Plaintiffs argue that disclosure requirements in Maryland's Retail Installment Sales Act ("RISA") and/or COMAR regulations require a vehicle sale and purchase agreement to be in a single document, i.e. the RISC.  Because the arbitration provision is not in the RISC, Plaintiffs argue, the arbitration provision is not enforceable.  See Plaintiffs' Opposition at 5 – 10. This argument lacks merit for several reasons.

#### (a)  The Sale and Purchase Agreement in This Case is Governed By The Credit Grantors Closed End Credit Provisions ("CLEC") That Preempts The RISA

Plaintiffs' argument is based on RISA's requirement that an installment sales agreement be evidence by an instrument in writing signed by the parties.

> An installment sale agreement shall be evidenced by an instrument in writing which contains all of the agreements of the parties. It shall be signed by all parties before the seller delivers to the buyer any of the goods covered by the agreement.

Md. Comm. L. § 12-604.   Plaintiffs also rely on a COMAR regulation that is based on RISA and has language virtually identical to the RISA provision quoted above.

> Every vehicle sales contract or agreement shall be evidence by an instrument in writing containing all of the agreements of the parties.   It shall be signed by all parties before the seller delivers to the buyer the vehicle covered by the agreement.

COMAR 11.12.01.15.

The RISA and/or COMAR requirement that a vehicle sales agreement be evidenced by an instrument in writing containing all of the agreements of is expressly superseded by CLEC.   The fatal flaw in Plaintiffs' argument is that RISA disclosure requirements[2] do not apply.  Plaintiffs eventually admit this on page 8 of their Opposition.

The record is clear that the parties elected CLEC (Subtitle 10 of Title 12 of the Commercial Law Article which is called the "Credit Grantors Closed End Credit Provisions"). See **EXHIBIT 1** to the Complaint, the RISC, at 4, para. 6 (right column); Plaintiffs' Complaint at para. 30; Plaintiffs' Opposition at 8.

As a matter of law, upon the election of CLEC,  CLEC becomes the only Maryland law governing disclosure requirements.  Section 12-1014(b) of CLEC states:

> Notwithstanding any provision of this title, a loan under this subtitle [10] is subject **only** to the disclosure requirements of this subtitle, and, to the extent applicable, of the federal Truth in Lending Act and regulations promulgated thereunder.

---

[2] The requirement for an instrument in writing which contains all of the agreements is a disclosure provision under consumer law.  E.g., see *LaChapelle v. Toyota Motor Credit Corporation et al.*, 102 Cal.App.4th 977; 126 Cal.Rptr.2d 32 (2002) ("A main purpose of the [Vehicle Leasing Act] . . . is to protect consumers by improving the disclosure of lease terms . . . ").   See also *Bailey v. Monaco Coach Corporation*, 350 F.Supp.2d 1036, 1040 (2004) and *Patriot Manufacturing, Inc. v. Dixon*, 399 F.Supp.2d 1298, 1302 (2005), where the courts stated that the Federal Trade Commission required mandatory disclosures in warranty agreements under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*

(emphasis added).   In *Biggus v. Ford Motor Credit Company*, 328 Md. 188 (1992), the Court of Appeals of Maryland held that Section 12-1014(b) of CLEC expressly preempts RISA disclosure provisions.   *Id.* at 199, 203, 208.   In *Loyola Federal Savings and Loan Association v. Francois et al.*, 331 Md. 30 (1993), the Court of Appeals of Maryland held

> in the area of disclosures, the election of CLEC expressly preempts other state law disclosure requirements, including those of RISA, whether they are consistent or inconsistent with CLEC.

*Id.* at 37.

In *Loyola*, the Court of Appeals of Maryland expressly rejected applying RISA § 12-604 to a contract governed by CLEC.  The specific issue before the court was whether the signing disclosure requirements of RISA §§ 12-604 and 12-605 applied to a RISC governed by CLEC.  The Court held that the seller-signature requirements in RISA §§ 12-604 and 12-605 are disclosure requirements expressly superseded by CLEC.  *Loyola* at 34, citing *Biggus v. Ford Motor Credit Company*, 328 Md. 188, 199, 202-03, 210 (1992).

### (b)    CLEC Also Preempts COMAR

Plaintiffs also hang their hats on a COMAR regulation promulgated by the Motor Vehicle Administration ("MVA").  Plaintiffs' Opposition to Motion to Compel Arbitration at 8. Md. Code Ann. Transp. § 12-104(b) grants authority to the Motor Vehicle Administration to adopt rules and regulations to carry out the Maryland Vehicle Law and other state law that the MVA is authorized to administer.   COMAR 11.12.01.15 was last amended June 15, 1979, four years before CLEC was enacted as part of the Credit Deregulation Act of 1983.[3]   COMAR 11.12.01.15 mirrors RISA's provisions.

---

[3] See COMAR 11.12.01.9999. See also *Biggus* at 197 discussing the legislative history of enacting CLEC.

Plaintiffs' argument that a 1979 COMAR regulation survives a specific statutory preemption in 1983 and two subsequent Court of Appeals of Maryland decisions upholding that preemption has no merit.

RISA and <u>all other Maryland law governing disclosure requirements</u> have been expressly superseded by CLEC.[4]  As stated above, Maryland's Court of Appeals held in *Biggus* and *Loyola* that CLEC, when elected, is the **only** Maryland law governing disclosure requirements and expressly preempts other state law disclosure requirements.

CLEC does not mandate what is contained in an installment sales agreement.  In *Loyola*, *supra,* the Court of Appeals of Maryland held that the circuit court erred in stating that CLEC "is completely silent as to what must be contained in a contract which falls under that subtitle" and therefore, one must look to RISA.  *Id.* at 36.  The Court held that a legislative purpose in enacting CLEC was to enable Maryland closed end credit grantors, who elect CLEC, to satisfy disclosure obligations by complying **only** with CLEC and, to the extent applicable, the Truth in Lending Act. *Id.*, *Biggus* at 208.[5]

### 4.    The Buyer's Order and the Retail Installment Sale Contract Should Be Construed Together

The facts in the record and the language in the documents show that the Buyer's Order and the RISC should be construed together.  The Buyer's Order and RISC were dated the same day.  The Buyer's Order specifically incorporates documents relating to

---

[4] COMAR 11.12.01.15 mirrors other RISA disclosure requirements.  For example, compare enumerated RISA disclosure requirements under §§ 12-605 and 12-606 including, *inter alia,* the signing of the agreement, delivery of the agreement, buyer's right to cancel instrument, handling of down payment, right of refund of deposit and/or payments, acknowledgements,  etc, to  **Exhibit B,** COMAR 11.12.01.15 (2004 ed.) showing similar required disclosure requirements.

[5] The court said the most obvious way to elect CLEC's application is to "include in the contract **documents** a statement that CLEC applies." (emphasis added).  *Biggus* at  200. The court implies that more than one document typically constitutes a retail installment sales agreement.

financing.  Both the Buyer's Order and the RISC have merger or integration provisions which purport to pull together all the terms of the Agreement.  Furthermore, the RISC terms show on their face that the RISC must be construed with other documents.  See **EXHIBIT 1** to Plaintiff's Complaint, paras. 4 and 5, referring to the application of the terms of a written warranty and the User's Buyer's Guide/window information.

In *Mayberry v. Ememessay*, 201 F.Supp.2d 687 (W.D.Va 2002), the court held that the Buyer's Order and RISC among other documents signed at the same time should be interpreted together and not independently.  *Id.* at 692.

> In this case, Plaintiff and Defendant sat down on one day and executed several documents, all relating to the credit sale of a single automobile.  All of these documents were signed because they were considered to be part of the sale process.  As such, these documents must be read together, so that "each document will be employed to ascertain the meaning intended to be expressed by the others."

*Id.* quoting *Countryside Orthopaedices, P.C. v. Peyton*, 251 Va. 142, 541 S.E.2d 279, 284 (2001)(quoting *Daugherty v. Diment*, 238 Va. 520, 385 S.E.2d 572, 574 (1989)).

Plaintiffs ignore that the Buyer's Order expressly defines the documents constituting the "Agreement" between the parties.  Both the Buyer's Order and the RISC preclude any oral statements being construed as part of the Agreement.  The Buyer's Order states "[y]ou agree that this Buyer's Order, together with any documents signed by the party against which such writing is sought to be enforced (collectively the "Agreement") contains the full and final agreement between the parties concerning the purchase of the Vehicle." See **EXHIBIT A** to the Motion to Compel.  The RISC states "[a]ny change to this contract must be in writing and we must sign it."   See **EXHIBIT 1** to the Complaint.

The RISC contains the Federal Trade Commission (FTC) "holder rule" explicitly tying the assignee of the RISC to other documents and aspects of the transaction.   The RISC looks to other documents for contract terms.  It states that the form on the window of the vehicle is part of the contract and that it overrides any contrary provisions in the RISC. See **Exhibit 1** to Complaint (back of RISC, para. 5).  The RISC also contemplates express warranties that may be offered by the dealer as part of the agreement, as well as a service contract that may be entered into with the dealer up to 90 days after the execution of the RISC. *Id.* at para. 4.

Moreover, the RISC explicitly states that the assignee is subject to the personal claims and defenses that buyer could bring against the dealer, thus explicitly binding the assignee to all documents and aspects of the Agreement. The FTC holder rule found in the RISC states that the assignee of the RISC is

> **SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF THE GOODS**.

**EXHIBIT 1** to Complaint at 4 (Notice: Any Holder).

The holder of the RISC (such as Prestige) remains liable for the obligations in other documents relating to the transaction. Likewise, the holder of the RISC (such as Prestige) is entitled to rely on and enforce obligations in the documents.

### 5.    Any Ambiguities In Contract Construction Are Resolved In Favor of Arbitration

Plaintiffs misstate how federal law on arbitration interacts with Maryland contract construction law.  Plaintiffs' Opposition at 3 – 5.  Plaintiffs would have this Court disregard

the principle that an ambiguity in the contract as to the scope of arbitration should be construed in favor of arbitration.

The Federal Arbitration Act "establishes as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . " *Moses H. Cone Memorial Hospital v. Mercury Const.*, 460 U.S.1, 24 (1983). Any doubts concerning the scope of arbitrable issues that arise during contract construction should be resolved in favor of arbitration. *Volt Information Sciences, Inc. v. Leland Stanford Junior University*, 489 U.S. 468, 476 (1989).

### 6.    The Court Decisions On Which Plaintiffs Rely Are Distinguishable And, In Any Event, Are Not Controlling

Plaintiffs' arguments are rooted in court decisions that are inapplicable to this matter. See Plaintiffs' Opposition at 7 – 10. Most of the decisions cited by Plaintiffs are based on RISA or RISA-like statutes, which do not apply. Other cases cited by Plaintiffs are distinguishable. None are controlling.

In *Smith v. Rosenthal Toyota, Inc.,* 83 Md. App. 55 (1990), the contract was based on RISA, not CLEC. The court does <u>not</u> hold that an arbitration provision in a CLEC contract must be contained in a single instrument containing all of the agreements of the parties. *Rosenthal* did not concern the applicability of an arbitration agreement. This case was about an attempt by an auto dealer to merge into the RISC fraudulent oral representations made to induce a buyer to sign various documents. In *Rosenthal* there was no signed Buyer's Order. Finally, *Rosenthal* was decided before *Biggus* and *Loyola* where the Maryland Court of Appeals held that CLEC, if elected, supersedes all required disclosure provisions under Maryland laws. The decision is inapposite.

In *Rugumbwa v. Bettern Motor Sales*, 136 F.Supp.2d 729 (2001), the law and facts were also different.    First, *Rugumba* was decided under Michigan's equivalent of Maryland's RISA - the Michigan Motor Vehicle Installment sales Contracts Act (MVISCA)[6] and the Michigan Motor Vehicle Sales Finance Act (MVSFA).    Second, there were two conflicting sales orders and neither complied with MVISCA and MVSFA.  *Rugumbwa* at 731, 733 (2001).  The Court found that the RISC and not the sales orders reflected the actual transaction. *Id.* Given the conflicting terms in the sales orders, the Court found that the arbitration provisions in the sales orders did not apply to the automobile sale. *Id.* at 733.    In the case before this Court, the RISC and Buyer's Order contain identical sales numbers and are completely harmonious. This Court is not presented with a choice between mutually exclusive terms in order to determine the content and scope of the parties' agreement.

In *Krueger v. Heartland Chevrolet, Inc.*, 2009 WL 1044948 (Mo.App.Ct. 2009), the Missouri Court of Appeals for the Western District did not enforce the arbitration provision because of the merger clause in the RISC.  Yet, *Krueger* directly contradicts a Missouri appellate decision from another district decided on the same facts one year earlier in 2008. The Missouri Court of Appeals for the Eastern District held in *Boulds v. Chase Auto Finance Corp.*, 266 S.W.3d 847 (2008) that arbitration was compelled because all three documents - Buyer's Order, an appended Arbitration Agreement, and Retail Installment Sales Contract – should be construed together. The arbitration provision applied to the

---

[6] Similar to Maryland's RISA § 12-604 (which is superseded by the election of CLEC), MVISCA's disclosure requirement includes having an instrument in writing that contains all the agreements of the parties with reference to the subject matter of the RISC.

RISC because the documents were signed by the Boulds together, and because the arbitration agreement stated that it is part of the contract with the dealer.

> It is true that nothing in the Retail Installment Sales Contract mentions arbitration. However, even in absence of explicit incorporation, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together.

*Boulds* at 851.  Given the conflicting state of the appellate law in Missouri, the *Krueger* decision should be given no weight by this Court.

In *Gonzalez V. Consumer Portfolio Services, Inc.*, 2004 WL 2334765 (Va. Cir. Ct.), the court could not apply the standard and clear Virginia law that two documents executed contemporaneously are to be construed as if the documents are in the same instrument. Virginia has a statute that mandates that a Buyer's Order must precede execution of the sales agreement, thereby preventing the application of otherwise clear Virginia contract interpretation law.  The facts in *Gonzalez* are distinguishable and different because there is no Maryland law prohibiting the execution of the Buyer's Order contemporaneously with the sales agreement.

### 7.    *SABMD v. ROSS* Is Not Precedent and Is Not Controlling

Plaintiffs cite *SABMD, LLC v. Ross*, No. 2277, Dec. 12, 2007. Plaintiffs' Opposition at 3, n. 1 and 2.   This decision should be ignored by this Court because it is not offered for a use permitted by the Maryland Court of Special Appeals. Furthermore, *Ross* is distinguishable because the outrageous conduct of the dealer drove the outcome of the case.

Under the Maryland Rules of Civil Procedure, an unreported opinion of the Maryland Court of Special Appeals may be cited in a court other than a Maryland appellate court only (1) when relevant under the doctrine of the law of the case, res judicata, or collateral estoppel, (2) in a criminal action or related proceeding involving the same defendant, or (3) in a disciplinary action involving the same respondent.  Md. Code Ann. Rule 1-104(b).  In response to a party using an unreported opinion, the Maryland Court of Special Appeals stated quite clearly that no weight whatsoever should be given to an unreported opinion:

> If we file the Opinion as unreported and, as a result, it does not appear in the official Maryland Appellate Reports, it is subject to the Rule.  Accordingly, **we shall ignore all references to the [unreported] Opinion and give it no weight whatsoever.**

*Nicholson v. Yamaha Motor Co., Ltd*, 80 Md.App. 695, 718 (1989). (emphasis added).

Prestige was not a party in *Ross*, as Plaintiffs admit.  See Plaintiffs' Opposition at 3.  Prestige was mentioned only because Prestige refused to purchase the contract from the dealer.

### 8.      Numerous Arbitration Organizations Are Available to the Parties

The parties and their attorneys, acting in good faith, will have no difficulty arranging for an administered or an ad hoc/self-directed arbitration.

Contrary to Plaintiffs' claims, the American Arbitration Association ("AAA") has not withdrawn from conducting consumer arbitrations. The AAA would arbitrate this matter if the Plaintiffs agree to use the organization.

The Judicial and Mediation Services (JAMS) would arbitrate this matter.  The organization continues to arbitrate all consumer law matters, including debt collection.

Creative Dispute Resolutions, LLC in Gaithersburg, MD would arbitrate this matter.  The Chair of the ADR section of the Maryland State Bar Association informed the attorneys for Prestige that he could provide contacts and otherwise help the parties select an arbitrator for this matter.

The National Arbitration Forum was accused of wrongful behavior in misrepresenting itself to the public and not disclosing relationships with creditors.   Its withdrawal from the field was appropriate, and it does not diminish the abundance of high-quality arbitration resources.

_____/s/_____

Francis J. Gorman, P.C. (Bar No. 00690)
fjgorman@gandwlaw.com
Michael R. Naccarato (Bar No. 29023)
mrnaccarato@gandwlaw.com
**GORMAN & WILLIAMS**
36 South Charles Street, Suite 900
Baltimore, Maryland 21201
Telephone: (410) 528-0600
Facsimile: (410) 528-0602

<u>**CERTIFICATE OF SERVICE**</u>

I CERTIFY that on this 24th day of August, 2009 a copy of the foregoing Motion to

Compel Arbitration and to Stay Proceedings was electronically served by CM/ECF to:

Peter A. Holland, Esq.                     Scott C. Borison, Esq.
The Holland Law Firm, P.C.                 Legg Law Firm, LLC
Clock Tower Place                          5500 Buckeystown Pike
1410 Forest Drive, Suite 21                Frederick, MD 21703
Annapolis, MD 21403                        301-620-1016
410-280-6133                               301-620-1018 (fax)
410-280-8650 (fax)                         Attorney for Plaintiffs
Attorney for Plaintiffs

                                   _____/s/_____
                                   Michael R. Naccarato

16